IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| WALTER N. STUMPF, JR., | * | |
|     Debtor | * | CASE NO: 1:08-bk-02127 MDF |
| | * | |
| GLENDA FOX, | * | ADV. NO: 1:08-ap-00126 MDF |
|     Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| WALTER N. STUMPF, JR., | * | |
|     Defendant | * | |
| | * | |

**OPINION[1]**

**I. Procedural History**

Before the Court is the Complaint of Glenda Fox ("Fox") seeking an order denying a discharge to Debtor Walter N. Stumpf, Jr. ("Debtor") under 11 U.S.C. § 727(a)(2) and (3).[2] Debtor filed his voluntary Chapter 7 bankruptcy petition on June 13, 2008. He initially omitted Fox as a creditor on Schedule F although she had obtained a judgment against him pre-petition.[3] In his Statement of Financial Affairs ("SOFA"), Debtor disclosed that he had been named as the defendant in two state court civil actions initiated by Fox. He filed his voluntary Chapter 7 petition a few weeks after Fox obtained the judgment. On July 29, 2008, the Chapter 7 trustee assigned to the case issued his final report indicating that no funds were available for distribution to creditors.

---

[1] Drafted with the assistance of Alexander Rafael Perez, Law Clerk.

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] Debtor's Amended Schedule F lists Glenda Fox as a judgment creditor in the amount of $23,296.35. Fox filed suit against Debtor in February 2008 on a claim for contribution on a joint loan secured by Fox's home.

Fox filed the instant Complaint on September 19, 2008. The first cause of action alleges that Debtor concealed his interest in certain assets, including various firearms, a gun safe, and a 1996 Fleetwood mobile home, with the intent to hinder, delay, and/or defraud his creditors, including Fox. The second cause of action alleges that Debtor failed to keep or maintain records from which his financial condition or transactions might be ascertained, thereby hindering, delaying, or defrauding his creditors.

Debtor filed an answer to Fox's complaint generally denying the allegations. Trial of the matter was held on September 23, 2010, and the parties submitted post-trial briefs. The matter is now ripe for adjudication. For the reasons set forth below, the Court finds in favor of Fox and against Debtor on both counts. The Court also finds that Debtor's discharge should be denied under § 727(a)(4)(A).

## II. Factual Findings

Debtor and Fox cohabited from 1998 until Debtor vacated Fox's residence in November 2007. There was conflicting testimony regarding the exact date upon which the relationship ended, but it can be assumed that it effectively terminated when the Debtor moved out. During the period Debtor and Fox were living together they co-signed a note and placed a mortgage on Fox's house located at 18 Bull Frog Road, Grantville, Dauphin County, Pennsylvania. The loan originated with Waypoint Bank (now Sovereign Bank), and the principal amount was $75,000. While this loan originally was intended to finance construction costs of a barn, the proceeds of the loan were used in part to satisfy Debtor's credit card bills and to pay off a purchase money loan on a 1996 Fleetwood mobile home that Debtor had purchased in 1998 for $28,000. Debtor lived in the mobile home until he moved in with Fox. Debtor's sister, who lived with him in the

2

mobile home before he moved in with Fox, continued to live there with her children for an unspecified period of time until she vacated the premises. At some point while Debtor and Fox were cohabiting, Debtor's son moved into the mobile home. Debtor testified that he transferred the mobile home into joint names with his son, but no documentary evidence was provided to substantiate this allegation. He also asserted that he added his son's name to the title so that his son could obtain insurance on the property in his own name. Debtor explained that he did not list the mobile home as an asset on his schedules because his son was living in the home when the petition was filed. At trial Debtor admitted that he retained an interest in the mobile home from the date it was purchased in 1998 until it was sold in January 2009.

After Debtor filed his petition in July 2008, he attended the creditors' meeting and was examined by the Chapter 7 trustee. After the trustee filed a final report stating that there were no assets available for distribution to creditors, Debtor offered the mobile home for sale. He placed "for sale" signs on the mobile home itself and near the entrance of the park where the home is located. He did not otherwise advertise or market the property. Debtor testified that he sold the home in January 2009 for $2,000 to two parties unrelated to Debtor.

While cohabiting with Fox, Debtor actively bought firearms at various auctions and gun shows. Debtor acknowledged that he would attend auctions at least once or twice a month where he would purchase firearms, ammunition, and other items. The guns collected by Debtor included "curios and relics" ("C & R") as those terms are defined at 27 C.F.R. § 478.11. From 2005 until November 1, 2008, Debtor was licensed by the federal Bureau of Alcohol, Tobacco

3

Firearms and Explosives ("ATF") as a C & R collector.[4] Debtor acquired a C & R license so he would not be required to go through a background check every time he purchased a weapon. During the time he lived with Fox, Debtor stored his gun collection in various locations around Fox's home including inside a gun safe, which could hold forty-two firearms. While Debtor stated that he took numerous pictures of his firearms and exchanged information on these items with other collectors, he stated that he did not maintain a comprehensive record of firearms he purchased or sold.

On Schedule B, Debtor reported that on the date of the petition he owned eight firearms, including two rifles, one shotgun, and five pistols. However, he failed to disclose on the same schedule that he owned the gun safe, which was purchased in 2005 for $955.82. Debtor admitted that he owned more than forty firearms when he moved out of Fox's residence in November 2007, which he said were sold at various gun shows in November and December of 2007. No evidence was produced as to the number of firearms sold, their manufacturer or model, or the amount of consideration Debtor received through those transfers. Debtor admitted that prior to being deployed with the National Guard in August 2007, he took photos of and made a record of all firearms he owned. However, only one photograph depicting eight firearms was produced through discovery. *See* Exhibit Fox-5.

---

[4]An uncompleted Federal Firearms License (FFL) Renewal Application indicating that Debtor's license would expire November 1, 2008 was admitted as evidence. Exhibit Fox-2. The deadline for renewing the C & R license was November 1, 2008. As Debtor did not renew his license by November 1, 2008, the Court assumes that Debtor's C&R license expired on that date. If Debtor had sold his curio and relic collection during the period he had a license he would have been required to document the sale in the ATF "bound" book no later than seven days after the transaction. 27 C.F.R. § 478.125.

### III. Discussion

Adjudicating a complaint in which the denial of a debtor's discharge hangs in the balance is a weighty task for a court. "A denial of discharge imposes an extreme penalty and should not be taken lightly." *Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 712 (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)). Consequently, objections to discharge under § 727 should be liberally construed in favor of debtors and strictly against objectors. *Rosen,* 996 F.2d at 1531. However, there is no constitutional right to a bankruptcy discharge; the "fresh start" is reserved for the "honest but unfortunate" debtor. *Grogan v. Garner*, 498 U.S. 279, 286-86 (1991).

The plaintiff has the burden of proving an objection to discharge by a preponderance of the evidence. *See Grogan*, 498 U.S. at 289-90; *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272 (Bankr. E.D. Pa. 2006); *Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 146 (Bankr. W.D. Pa. 2004); Fed. R. Bankr. 4005. "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case." *Adams v. Zembko (In re Zembko)*, 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (quoting *PaineWebber, Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 (S.D. N.Y. 1996)).

    A.    *Section 727(a)(2)*

Fox objects to Debtor's discharge pursuant to § 727(a)(2), which reads as follows:

(a) The court shall grant the debtor a discharge, unless-
    (2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, mutilated, or concealed-
        (A) property of the debtor, within one year before the date of the filing of the petition; or

5

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

In order to sustain an objection to a debtor's discharge under § 727(a)(2), a plaintiff must prove that there has been: (1) a transfer, removal, destruction, mutilation, or concealment; (2) involving property of (a) the debtor, one year prior to the filing of the petition, or (b) the bankruptcy estate, after the filing; (3) whereby a debtor intended to hinder, delay, or defraud his creditors. *See Applebaum v. Henderson (In re Henderson)*, 134 B.R. 147 (Bankr. E.D. Pa. 1991); *see also Exner v. Schultz (In re Schultz)*, 71 B.R. 711, 715 (Bankr. E.D. Pa. 1987). "Harm to a creditor is not an element required by § 727(a)(2)." *Baum v. Baum (In re Baum)*, 2005 Bankr. LEXIS 514, *19 (Bankr. N.D. Tex. 2005).

Fox asserts that Debtor concealed the gun safe, numerous firearms, and the mobile home by failing to include these assets on his bankruptcy petition. Further, Fox alleges that Debtor transferred the mobile home after the petition was filed for inadequate consideration. Debtor does not deny that gun safe and the mobile home were assets of the estate, but argues that they were of limited value and that their omission from the schedules was inadvertent. As to the firearms, Debtor testified that he sold most of his collection after he moved from Fox's residence.

This Court must determine whether Debtor, with the intent to defraud creditors or the Chapter 7 trustee, concealed the mobile home, the gun safe, and numerous firearms. Further, the Court must determine whether Debtor defrauded creditors and the trustee by selling

6

approximately forty guns within a year prior to the filing of the petition[5] or by transferring the mobile home after the petition was filed.

The Third Circuit Court of Appeals has "defined concealment to include preventing the discovery of or withholding knowledge of the property." *United States v. Schireson*, 116 F.2d 881, 884 (3d Cir. 1940) (defining concealment of assets from a bankruptcy trustee), *quoted in Panda Herbal International, Inc. v. Luby (In re Luby)*, 438 B.R. 817 (Bankr. E.D. Pa. 2010) (other citations omitted); *Applebaum*, 134 B.R. at 157. Here, Debtor concealed both the mobile home and gun safe by failing to list these assets in his schedules when he filed his bankruptcy petition. Thus, the Chapter 7 trustee, unaware of the existence of these assets, was deprived of the opportunity to question Debtor about them and to determine whether they should be administered for the benefit of creditors. Debtor admitted at the hearing that he held an interest in the mobile home and gun safe on the petition date, but he not only failed to report those assets on his schedules when the petition was filed, he also failed to amend the schedules even after Fox filed the Complaint. At trial, Debtor suggested that he was uncertain about whether the mobile home had to be reported because it was jointly owned with his son. Even if I accept Debtor's explanation as true, it is a *non sequitur*. Transferring the mobile home into joint names did not divest Debtor of his interest in the property. Debtor was still obligated to disclose his interest. Debtor not only failed to disclose assets, he also failed to disclose approximately forty firearms that he sold within a year before his bankruptcy filing. Further, the mobile home was sold

---

[5]The sale of firearms was not disclosed on Debtor's Statement of Financial Affairs. *See* Official Form 7, para. 10 ("List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security, within two years immediately preceding the commencement of the case.")

Case 1:08-ap-00126-MDF    Doc 42    Filed 02/09/11    Entered 02/10/11 12:26:08    Desc
Main Document    Page 7 of 17

without concurrence of the trustee and without court approval although it remained property of the estate. *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116 (2d Cir. 2008) (undisclosed assets remain property of the estate after the case is closed).

Although Debtor concealed estate property and transferred assets after the filing of the petition, he will not be denied a discharge unless Fox sustains her burden to prove that he undertook these actions with the intent to hinder, delay, or defraud his creditors or the trustee. The intent to hinder, delay or defraud requires proof of actual intent. Fraudulent intent is rarely susceptible to direct proof. *In re Saphire*, 139 F.2d 34, 35 (2d Cir. 1943). "Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false." *Rasmussen v. Unruh (In re Unruh),* 278 B.R. 796, 803 (Bankr. D. Minn. 2002) (citing *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993)). A finding of actual intent to hinder or defraud in connection with the transfer or concealment of assets may be based on inferences drawn from a course of conduct. *United States Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005). Intent to defraud may also be inferred from the presence of certain "badges of fraud." *United States Trustee v. Rose (In re Rose)*, 425 B.R. 145, 155 (Bankr. M.D. Pa. 2010). As the Court of Appeals for the Second Circuit explained in *Salomon v. Kaiser (In re Kaiser)*, among the many circumstances from which courts have inferred intent to defraud are: (1) concealment of facts and false pretenses by the transferor; (2) absconding with or secreting the proceeds of the transfer immediately after their receipt; and (3) the lack or inadequacy of consideration for the

8

Case 1:08-ap-00126-MDF    Doc 42    Filed 02/09/11    Entered 02/10/11 12:26:08    Desc
Main Document    Page 8 of 17

property transferred. 722 F.2d 1574 (2d Cir. 1983) (citing *In re Freudmann*, 362 F. Supp 429, 433 (S.D.N.Y. 1973); *Adamson v. Bernier (In re Bernier)*, 282 B.R. 773 (Bankr. D. Del. 2002).[6]

Several of the "badges of fraud" are present in the within case. First, by failing to disclose his interest in the mobile home and the gun safe, Debtor effectively concealed the existence of property of the estate from the trustee. He also concealed the existence of pre-petition transfers of assets by failing to disclose on his SOFA the sale of his firearms collection. Second, Debtor sold his mobile home and retained the proceeds for his own use by failing to disclose the existence of the property on his schedules.

The disposition of assets for inadequate or no consideration is also a "badge of fraud." On the record before me I am unable to conclude that the mobile home was sold for inadequate consideration. Fox, who testified that she saw the mobile home roughly six months before it was sold, claimed that it was in fair, livable condition. Debtor admitted that numerous improvements had been made to the property before it was sold. But no expert testimony on the value of the mobile home was provided. What is clear is that the property was sold in a relatively short period of time after limited advertising. Because the mobile home was sold in a private sale, and not at an auction, the Court is not convinced that Debtor obtained a fair market price for the property. More important, the sale of the mobile home is part of a pattern of conduct that began before the

---

[6]Other badges of fraud include: the family, friendship or close association between the parties; the retention of possession, benefit or use of the property in question; the financial condition of the party sought to be charged both before and after the transaction; the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and the general chronology of the events and transactions under inquiry. *Carter Engineering Company, Inc. v. Carter (In re Carter)*, 236 B.R. 173, 182 (Bankr. E.D. Pa. 1999).

petition was filed and continued afterward in which Debtor sold assets and was unable to account for the disposition of the proceeds.[7]

The existence of these "badges of fraud" provide sufficient evidence of Debtor's actual intent to defraud his creditors, thereby meeting this element of a claim under § 727(a)(2). Accordingly, having determined that Debtor concealed or transferred his property within a year before he filed his petition with intent to defraud creditors and transferred property of the estate with the intent to defraud creditors, Debtor's discharge will be denied under § 727(a)(2).

B.      *Section 727(a)(3)*

Fox also objects to Debtor's discharge pursuant to § 727(a)(3) alleging that he failed maintain adequate records of his ownership of various firearms. Section 727(a)(3) provides as follows:

> (a) The court shall grant the debtor a discharge, unless-
>> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act was justified under all of the circumstances of the case.

11 U.S.C. 727(a)(3).

---

[7]The Court finds particularly troubling Debtor's inability to provide information regarding the pre-petition sale of approximately forty firearms. Debtor admitted at trial that during the nine years he lived with Fox he regularly purchased guns at auctions and gun shows. He further admitted that he owned approximately forty firearms when the parties separated. Fox testified extensively about Debtor's efforts to tag and photograph his collection before he left for duty in the National Guard in August 2007. It is difficult for the Court to understand how Debtor, an avid collector, could have sold forty firearms from his collection and be unable to recount where, when, and for how much he sold the guns. On Schedule B, Debtor valued his collection of eight guns at $2000. If the guns sold were of a comparable value, six months before he filed his petition, his collection may have been worth in excess of $10,000.

To qualify as "honest but unfortunate," a debtor must provide an accurate accounting of his financial affairs. While in certain circumstances a debtor may justify his failure to keep records, a discharge may be granted only if the debtor presents an accurate and complete account of his financial situation. *Alten*, 958 F.2d 1226 (3d Cir. 1992); *K & K Co., Inc. v. Conde (In re Conde)*, 386 B.R. 577, 582 (Bankr. W.D. Pa. 2008) (citing *State Bank of India v. Chalasani*, 92 F.3d 1300, 1309 (2d Cir. 1996)).

To sustain an objection to a discharge under this section, the objecting party must show: "(1) that the debtor failed to maintain and preserve adequate records and (2) this failure to maintain makes it impossible to ascertain the debtor's financial condition and material business transactions." *Chase Bank USA, N.A. v. Ritter (In re Ritter)*, 404 B.R. 811, 833 (Bankr. E.D. Pa 2009) (citing *Alten*, 958 F.2d at 1232). Unlike § 727 (a)(2), subsection (a)(3) does not require a showing of intent or reckless indifference. *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (citing *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999); *In re Juzwiak*, 89 F.3d 424, 430 (7th Cir. 1996)). "The purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Scott*, 172 F.3d at 969 (internal quotations omitted).

When determining the sufficiency of a debtor's record keeping, a court must consider the sophistication, education, and experience of the debtor. *Eveland v. Kishbaugh (In re Kishbaugh)*, 399 B.R. 419 (Bankr. M.D. Pa. 2009) (citing *Holber v. Jacobs (In re Jacobs)*, 381 B.R. 147, 166 (Bankr. E.D. Pa. 2008) (citations omitted). *See also Scott*, 172 F.3d at 970 (noting that generally § 727(a)(3) is not implicated when a consumer debtor does not operate a business). While this provision is not routinely applied to consumer debtors, "a 'sudden and large dissipation of

11

assets,' coupled with a lack of books and records will provide a basis for denial of a discharge under this section." *PNC Bank, N.A. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000) (quoted in *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 522 (Bankr. N.D. Ill. 2006)).

Fox asserts that Debtor's failure to maintain a record of the purchase and sale of firearms justifies denial of Debtor's discharge under § 727(a)(3). Debtor had a C & R license that expired in November 2008. Federal law requires C & R collectors to maintain a record of firearms acquired and transferred in a "bound" volume. 27 C.F.R. §§ 478.121, 478.125(f) (requiring licensees to record "the date of receipt, the name and address or the name and license number of the person from whom received, the name of the manufacturer and importer (if any), the model, serial number, type, and the caliber or gauge of the firearm curio or relic"). When a C&R firearm is sold, the collector must enter the sale date and the name and identification, such as a driver's license number, of the person to whom the firearm is sold. Additionally, a collector is obligated to maintain these records for twenty years after the date of the transaction. 27 C.F.R. § 478.129.

Fox has met her burden to prove that Debtor failed to keep proper records of his firearms transactions as required by federal law. However, in order to meet her burden of proof, Fox also must establish that Debtor's failure to maintain these records prevented her from ascertaining Debtor's financial condition. The records Debtor was required to maintain would have indicated which firearms were purchased and which were sold and would have enabled a trustee to more easily value Debtor's collection during the pre-petition period as well as on the petition date. If Debtor had maintained the required records, creditors and the Chapter 7 trustee would have been able to determine whether Debtor owned non-exempt assets of significant value six months prior

12

to his bankruptcy filing. Although a consumer debtor generally is not required to maintain a record of non-business transactions, Debtor was under a statutory duty to document the purchase and sale of firearms because he elected to be licensed as a C & R collector. The evidence shows that he failed to fulfill this duty.

Once it is determined that a debtor has failed to maintain relevant records, the court must determine whether this failure is justified under the circumstances of the case. *Alten*, 958 F.2d at 1230. The burden is on the debtor to demonstrate that the failure to maintain records is justified. *Id.* at 1233. An unsophisticated debtor with a limited education is not held to the same standard as a sophisticated businessperson. *Id.* at 1231. If his actions are "what a normal, reasonable person would do under similar circumstances[,]" his lack of records is justified. *Id.*

Debtor is not a sophisticated person. However, his testimony demonstrated that he was well versed in the advantages of obtaining a C & R license. He stated that he was familiar with the manual issued by ATF and identified the manual as a collection of firearms regulations. He gave two reasons for not maintaining the "bound" volume required under 27 C.F.R. 478.125. On direct examination he testified that the provision applied only to dealers. On cross examination he stated that compliance with the regulation was optional. He further stated that he was advised by the local ATF office that he did not need to comply with the regulations. The Court does not find Debtor's testimony on this issue to be credible. Accordingly, Debtor has failed to provide adequate justification for his failure to maintain records that would have assisted the trustee in determining whether Debtor owned valuable, undisclosed assets. Having found that Debtor, without justification, failed to keep records from which his financial condition could be ascertained, Debtor's discharge will be denied under § 727(a)(3).

13

C. *Section 727(a)(4)*

Though not specifically alleged by Fox, the Court will analyze the facts of the case under § 727(a)(4) as well. Section 727(a)(4) provides:

(a) The court shall grant the debtor a discharge, unless-
    (4) the debtor knowingly and fraudulently, in or in connection with the case-
        (A) made a false oath or account[.]

11 U.S.C. § 727(a)(4).

A debtor's discharge will be denied under § 727(a)(4) if the court finds that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *Cadle Co. v. Zofko,* 380 B.R. 275, 382 (W.D. Pa. 2007) (citing *Spitko*, 357 B.R. at 312; *Moore v. Strickland* (*In re Strickland)*, 350 B.R. 158, 163 (Bankr. D. Del. 2006); *Dolata*, 306 B.R. at 148).

*1. Debtor made a statement under oath*

Bankruptcy schedules are statements made under oath. Fed. R. Bankr. P. 1008 (providing that petitions, lists, schedules, statements and amendments shall be verified or contain an unsworn declaration under 28 U.S.C. § 1746); 28 U.S.C. § 1746 (providing that an unsworn declaration must be made under penalty of perjury and shall have the same force and effect as an oath). A debtor's failure to list all assets in his schedules and the SOFA can constitute a false oath for purposes of § 727(a)(4)(A). *Cadle Co.*, 380 B.R. at 382 (citing *Spitko,* 357 B.R. at 312; *Strickland,* 350 B.R. at 163 (other citations omitted)). Debtor does not dispute that the schedules and statements filed along with his bankruptcy petition are statements filed under oath. Specifically, Debtor admits to having read and signed the verification included with these documents.

14

*2. Debtor's statement was false and he knew it was false*

By verifying his schedules and statements, Debtor attested that these documents were complete and correct. "Failure to list all assets owned by a debtor can constitute a false oath or account resulting in the denial of discharge under § 727(a)(4)(A)." *Strickland*, 350 B.R. at 163; *also, see Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 682-83 (6th Cir. 2000) (affirming denial of discharge on grounds that debtor made a false oath by failing to include in his schedules property in which he had a beneficial interest); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177-78 (5th Cir. 1992) (finding ample support for denial of discharge where debtor failed to schedule his ownership interest in a corporation); *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991) (affirming denial of discharge for debtor's failure to schedule a Rolex watch, silver, stock, and golf clubs); *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990) (affirming denial of discharge where debtor failed to disclose his interest in a dinner theater nominally owned by his wife). Here, Debtor failed to list his ownership of a mobile home and a 42-gun capacity gun safe. He also failed to disclose on his SOFA that he had transferred approximately forty guns six months before he filed for bankruptcy. He certainly was aware that he owned a gun safe and a mobile home when he filed his schedules. He also should have recalled that he had sold approximately forty firearms six months before he filed. Therefore, I conclude that Debtor made several statements while under oath that were false and that he knew were false.

*3. Debtor's statement was made with fraudulent intent*

A false oath must be made with a fraudulent intent. The Court must find that Debtor knowingly intended to defraud or engaged in behavior which displayed a reckless disregard for the truth. *Richardson v. Clarke (In re Clarke)*, 332 B.R. 865, 872 (Bankr. C.D. Ill. 2005). If a

debtor's bankruptcy schedules reflect a "reckless indifference to the truth," then the plaintiff seeking denial of the discharge need not offer any further evidence of fraud. *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 355 (Bankr. N.D. Ill. 1988). The requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence. *Clarke,* 332 B.R. at 872. However, a discharge should not be denied where the untruth was the result of mistake or inadvertence. *Lanker v. Wheeler (In re Wheeler)*, 101 B.R. 39, 49 (Bankr. N.D. Ind. 1989). "While 'mere mistake or inadvertence is not sufficient to bar a debtor's discharge' under § 727, reckless indifference to the truth has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." *United States Trustee v. Garland (In re Garland)*, 417 B.R. 805, 815 (B.A.P. 10th Cir. 2009) (quoting *Cadle Co. v. King (In re King)*, 272 B.R. 281, 302 (Bankr. N.D. Okla. 2002)).

Debtor admitted that he had failed to include the gun safe and the mobile home on his schedules. He provided no explanation for the omission of the gun safe, but asserted that he did not believe that he was required to include the mobile home because it was jointly owned with his son. As discussed earlier, the Court does not find this representation to be credible. Further, the Court finds that Debtor's non-disclosure was strategic and assisted in the concealment of assets held pre- and post-petition. He failed to disclose the existence of the gun safe and the transfer of forty firearms pre-petition. Both disclosures could have lead to further inquiry by the trustee concerning his firearms collection. Also, he was not living in the mobile home at the time he filed and sold the home shortly after his meeting of creditors was concluded without ever disclosing the existence of the property to the Chapter 7 trustee. All of these actions support the finding that Debtor knowingly and fraudulently made a false oath.

*4. Debtor's statement related materially to his bankruptcy case*

Debtor's false oath was material to his bankruptcy case. A false oath is material and warrants a denial of discharge, if it concerns the discovery of assets or the existence or disposition of debtor's property. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984). False oaths regarding worthless assets may bar the entry of a discharge. *See id.* at 618. A false oath may be material even though it does not result in any detriment or prejudice to the creditor. *Clarke*, 332 B.R. at 872. Here, Debtor's false oath concerned possible assets of the estate, which may have been non-exempt and available for liquidation by the trustee. Thus, the false oath was material to Debtor's case.

All elements being present for a finding that Debtor knowingly and fraudulently made a false oath, his discharge also is denied under § 727(a)(4)(A).

### IV. Conclusion

For the reasons set forth above, Fox's objection to Debtor's discharge is sustained. Debtor's discharge is denied under § 727(a)(2), (a)(3), and (a)(4). An appropriate order will be entered.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: February 9, 2011